THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

DARRELL SPENCER,

      Petitioner,

   v.

UNITED STATES OF AMERICA,

      Respondent.

HON. JEROME B. SIMANDLE

CIVIL NO. 05-1781 (JBS)

**OPINION**

**APPEARANCES:**

Darrell Spencer
#40807-050
FCI Schuylkill
P.O. Box 759
Minersville, PA 17954-0759
    Petitioner, Pro Se

Jason M. Richardson, Esq.
Office of the U.S. Attorney
Camden Federal Building
401 Market Street
P.O. Box 1427
Camden, NJ 08101
    Attorney for the Respondent

**Simandle, District Judge:**

    Upon his plea of guilty to possession of a firearm by a
convicted felon, Petitioner Darrell Spencer ("Petitioner" or "Mr.
Spencer") was sentenced by this Court on April 7, 2004 to
imprisonment for a term of 92 months followed by a three-year
term of supervised release.  This matter comes before the Court
upon Mr. Spencer's petition to correct his sentence pursuant to
28 U.S.C. § 2255.  [Docket Item No. 1.]  The Court has

considered all submissions.  For the reasons set forth below, the petition will be denied.

## I.   BACKGROUND

On August 1, 2003, in Pleasantville, New Jersey, a police officer stopped an erratically moving vehicle in which Mr. Spencer was a passenger.  (Presentence Invstg. Rpt. at 4.)  The officer noticed Mr. Spencer attempting to hide an object under the back seat of the car and instructed all occupants to exit the vehicle.  (Id. at 5.)  Upon searching the vehicle, the officer discovered a handgun ("Weapon") under Petitioner's seat.  (Id.)

On September 30, 2003, a federal grand jury returned a one-count indictment charging Petitioner as a previously convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and (2) ("Section 922(g)"), (Ind'mt. at 1), and a warrant was issued for his arrest, (Presentence Invstg. Rpt. at 6).

Petitioner entered a guilty plea to this charge before the undersigned on January 6, 2004, pursuant to a written plea agreement dated October 10, 2003.  (Tr. 01/06/04 at 6.)  Petitioner stipulated to possessing a loaded Smith and Wesson firearm on August 1, 2003 and to being previously convicted of at least one violent or drug-related felony.  (Presentence Invstg. Rpt. at 3.)  During the plea colloquy, the Court verified that Petitioner understood that a guilty plea voided his right to a

2

jury trial, the presumption of innocence, and the right to force the Government to prove every element of his alleged crime beyond a reasonable doubt.  (Tr. 01/06/04 at 10.)  Satisfied that Mr. Spencer understood the content and procedural ramifications of his intended guilty plea, the Court proceeded to explain to Petitioner that the only promise with regard to his sentence was that it would not exceed Section 922(g)'s ten-year statutory maximum, and that in addition to the sentence, Petitioner might receive up to a three-year period of supervised release and be forced to pay fines up to $250,000.  (Id. at 12-13); see 18 U.S.C. § 924(2) ("Whoever knowingly violates subsection . . . (g) of Section 922 shall be . . . imprisoned not more than 10 years.").  Petitioner indicated that he understood.  (Tr. 01/06/04 at 18.)  The Court accepted his guilty plea.  (Id. at 24.)

The U.S. Probation Office ("Probation") prepared Petitioner's Pre-sentencing Investigation Report on March 9, 2004.  (Presentence Invstg. Rpt. at 1.)  Probation computed Petitioner's Criminal History Score by considering five previous adult arrests.  (Id. at 11-15.)  Probation assigned Petitioner three points for a robbery he committed on March 14, 1999 for which Petitioner was arrested on March 26, 1999. (Id. at 11.)  Probation assigned Petitioner three points for unlawfully possessing a firearm on May 9, 1999 for which he was arrested the

same day.  (Id. at 12.)  Probation assigned an additional three
points for another illegal possession of a firearm conviction
that Petitioner committed and for which Petitioner was arrested
on July 14, 1999.  (Id. at 13.)  The Superior Court of New Jersey
consolidated these three convictions and sentenced Petitioner to
five concurrent years on each count.  (Id. at 11, 12, 13.)
Probation also assigned Petitioner three points for a September
5, 2000 conviction for aggravated assault and robbery, (id. at
14), and three points for an August 13, 2002 conviction on
several drug related counts, (id. at 15).  Finally, Probation
added two points to Petitioner's Criminal History Score for
committing the instant offense within two years of release from
state prison, in accordance with U.S.S.G. § 4A1.1(e).  (Id. at
15.)  As a result, Probation set Petitioner's Criminal History
Score at seventeen, placing him in Criminal History Category VI.
(Id.)

In addition, in computing the Total Offense Conduct Score,
Probation initially assigned Mr. Spencer a Base Offense Level of
twenty-four, pursuant to U.S.S.G. § 2K2.1(a)(2), because
Petitioner had been convicted twice previously for violent
crimes.  (Id. at 7.)  Probation increased Petitioner's Offense
Level by two points because the Weapon was stolen, pursuant to
U.S.S.G. § 2K2.1(b)(4).  (Id.)  Finally, Probation decreased Mr.
Spencer's Offense Level by three points for acceptance of

4

responsibility, pursuant to U.S.S.G. § 3E1.1(a) and (b), assigning a Total Offense Level of twenty-three.  (Id.)

At Petitioner's sentencing hearing, Petitioner, through counsel, contended that his Criminal History Score was overstated. (Tr. 04/07/04 at 10-11.)  Consequently, counsel requested a downward departure, arguing that Petitioner's three prior convictions, sentenced on the same day, were "related" because they were consolidated for trial purposes and were part of a "package deal."  (Id. at 11-12.)  Unconvinced, the Court determined that a downward departure was unwarranted, emphasizing the seriousness of Petitioner's criminal past and noting that Petitioner's offenses were separate, distinct, and "punctuated by intervening arrests."  (Id. at 16.)  The undersigned also found, by a preponderance of the evidence, that the Weapon was stolen, and that the two-point increase assigned by Probation was therefore appropriate.  (Id. at 9.)  Recognizing that the Federal Sentencing Guidelines ("Guidelines") recommended a range of 92-115 months, this Court sentenced Petitioner to ninety-two months in prison followed by a three-year period of supervised release. (Id. at 24.)  The Court advised Petitioner of his right to appeal. (Tr. 04/07/04 at 26:16-22.)  Petitioner did not appeal.

On March 31, 2005, Petitioner submitted a pro se motion to correct his sentence, pursuant to 28 U.S.C. § 2255 ("Section

2255"), alleging misapplication of the Guidelines, violations of the Fifth and Sixth Amendments, and non-adherence to the Federal Rules of Criminal Procedure.  (Pet'r's. Br. at 2.)  [Docket Item No. 1].  In making this latter claim, Petitioner mis-cited the rule in question as Federal Rule of Criminal Procedure 11(c).  (Pet'r's. Br. at 2.)  In response, the United States ("Respondent" or "Government") filed a brief in opposition, addressing in large part Petitioner's claim under the mis-cited subsection. (Gov't's Br. at 6-14) [Docket Item No. 5].  The Court, realizing that the substance of Petitioner's argument indicated that he intended to cite Federal Rule of Criminal Procedure 11(b)(1)(H), ordered the Government to respond to Petitioner's claim under the appropriate subsection.  (Ltr. Order, Jan. 22, 2007.)  [Docket Item No. 6].  Respondent complied, (Gov't's 2 Br. at 2-3)  [Docket Item No. 7], and Petitioner submitted a supplementary brief attempting to "clarify" his previous claims, (Pet'r's. Suplm. Br. at 1-2) [Docket Item No. 8].

**II.  DISCUSSION**

   **A.  Petitioner's Claims**

   Petitioner asserts five arguments in support of his petition for habeas relief.  First, Petitioner claims that the Court violated Federal Rule of Criminal Procedure 11(b)(1)(H) ("Rule 11") by failing to notify him of the maximum possible statutory

sentence for the crime to which he pled guilty because he reasonably thought that the maximum term of imprisonment included any term of supervised release.  (Pet'r's. Br. at 2.)

Second, Petitioner claims that the Court violated the Fifth and Sixth Amendments by failing to set forth the existence of his prior convictions in the indictment and by using this fact to sentence Petitioner without proving it to a jury beyond a reasonable doubt.  (Id. at 5.)

Third, Petitioner claims that the Court violated his Fifth and Sixth Amendment rights, as articulated by the Supreme Court in Blakely v. Washington, 542 U.S. 296 (2004) and United States v. Booker, 543 U.S. 220 (2005), by failing to allege the stolen status of the Weapon in the indictment, by using this fact to sentence him without first proving it to a jury beyond a reasonable doubt, (Pet'r's. Br. at 4), and by inducing him to waive his right to a jury trial by failing to notify him that the Weapon was stolen, (id. at 7).

Fourth, Petitioner claims that the Court misapplied the Guidelines by failing to count three of Petitioner's past convictions as "related" offenses for purposes of sentencing, pursuant to U.S.S.G. § 4A.1.1a n. 3.  (Pet. Suplm. Br. at 1.)

Finally, Petitioner claims that he did not receive effective representation at sentencing, in violation of the Sixth Amendment, because his attorney failed to raise objections based

on Supreme Court decisions in <u>Blakely</u> and <u>Booker</u> and because his attorney failed to "hold the government" to calculating a Base Offense Level of twenty.  (Pet'r's. Br. at 6.)

**B.  Standards Governing Petitioner's Claims**

A federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255 (2000).  That court will grant the petitioner a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  <u>Id.</u>  The question whether to order a hearing is committed to the sound discretion of the district court.  <u>United States v. Day</u>, 969 F.2d 39, 41 (3d Cir. 1992).  "In exercising that discretion the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record."  <u>Id.</u> at 42 (citing <u>V.I. v. Forte</u>, 865 F.2d 59, 62 (3d Cir. 1989).  The district court will correct a defendant's sentence if it finds "that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack."  28 U.S.C.

§ 2255.  Ultimately, however, a petitioner bears the burden of proving that his conviction is illegal.  United States v. Hollis, 569 F.2d 199, 205 (3d Cir. 1977).

Moreover, the motions in a pro se petition must be construed liberally and may not be subjected to standards applicable to trained lawyers.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998).

### C.  Jurisdiction

A prisoner who seeks to challenge the legality of his sentence must file a petition pursuant to Section 2255 with the sentencing court.  See U.S. v. Fiorelli, 337 F.3d 282, 285 (3d Cir. 2003); Jennings v. United States, No. 04-4215(JBS), 2006 WL 2040404, at *2 (D.N.J. July 19, 2006).  This Court has jurisdiction over Petitioner because this Court originally sentenced him and he challenges the legality of that sentence.

### D.  Timeliness

The petition was timely filed under 28 U.S.C. § 2255.  A one-year statutory period applies to claims pursuant to § 2255 which begins to run from the occurrence of one of the following: "(1) the date on which the judgment becomes final," (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which

9

the right asserted was initially recognized by the Supreme Court,
if that right has been newly recognized by the Supreme Court and
made retroactively applicable to cases on collateral review; or
(4) the date on which the facts supporting the claim or claims
presented could have been discovered through the exercise of due
diligence."  28 U.S.C. § 2255.

When a petitioner files a direct appeal, his conviction
becomes final upon the expiration of the period for application
for a writ of certiori.  Kapral v. United States, 166 F.4d 565,
567 (3d Cir. 1999).  When a petitioner does not file a direct
appeal, his conviction becomes final ten days after the
conviction, upon the expiration of the appeal period.  See, e.g.,
United States v. Massara, 174 Fed. Appx. 703, 708 (3d Cir. 2006)
(not precedential); United States v. Michel-Galaviz, 163 Fed.
Appx. 743, 745 (10th Cir. 2006); Never Misses A Shot v. United
States, 413 F.3d 781, 782 (8th Cir. 2005) (per curiam).  This
Court entered Petitioner's judgment on April 8, 2004.  Petitioner
did not appeal his judgment within ten days and did not seek a
writ of certiori.[1]

---

[1]  Petitioner offers no explanation as to why he did not
pursue these claims on direct appeal.  Importantly, a habeas
petition is not a proper substitute for a direct appeal, and
unless a petitioner can prove that the failure to raise issues on
direct appeal was excused by cause, failure to raise results in a
bar to doing so on collateral attack.  U.S. v. Essig, 10 F.3d 968
(3d Cir. 1994); see also McCleskey v. Zant, 499 U.S. 467, 493
(1991) (defining cause as "some objective factor external to the
defense that impeded counsel's efforts to raise the claim").  In

Petitioner's judgment, therefore, became final on April 19, 2004.  Mr. Spencer's petition is timely filed because he filed it on April 7, 2005, which is within one year of the date on which his case became final.

### E.  Petitioner's Claim Regarding Lack of Notice

Petitioner contends that the Court failed to provide him with notice, pursuant to Rule 11, of the maximum possible consequences of his guilty plea because he reasonably believed that the maximum term of ten years imprisonment included the maximum three years of supervised release.  (Pet'r's. Suplm. Br. at 1.)

Prior to accepting a guilty plea, the Court must explicate for the defendant "any maximum possible penalty, including imprisonment, fine, and term of supervised release" prior to accepting a guilty plea.  Fed. R. Crim. P. 11(b)(1)(H); see also United States v. Schweitzer, 454 F.3d 197, 202 (3d Cir. 2006) (noting that Rule 11 contains "a series of admonitions and

---

this instance, a liberal reading of Petitioner's theory of the case reveals that his argument is predicated on perceived changes in the law of sentencing resulting from the Supreme Court's decision in Booker.  As a result, Plaintiff's failure to raise these claims on direct appeal is arguably excused for cause because, as of the date Petitioner's opportunity to appeal expired, the change in the law effected by Booker had not yet occurred, and as a result these claims were not available to the defense.  Because Petitioner's failure to appeal is arguably excused for cause, and because the Government does not contend that Petitioner's claim is barred for failure to raise issues on direct appeal, this Court will not deem Petitioner to have procedurally defaulted on his Booker claim, which, in any event, does not apply to this case.

warnings to be provided to the defendant"). The record conclusively shows that the Court clearly informed Petitioner during his plea colloquy that the terms of imprisonment and supervised release would be separate and served consecutively. (Tr. 01/06/04 at 13.) Specifically, the Court explained to Petitioner that the maximum period of imprisonment that could result from a guilty plea was ten years. (Id. at 12.) The Court further explained that, in addition to the term of imprisonment, Petitioner could be sentenced to a three-year term of supervised release. (See id. at 13) (explaining, after noting maximum prison term and fines, that "[I]n addition to what I've mentioned, you could be sentenced to a term of supervised release of at least two years and not more than three years, which begins after you get out of prison") (emphasis added). The record also conclusively shows that Petitioner understood the Court's instructions. (See id. at 12-13) (noting that Petitioner acknowledged understanding his maximum possible imprisonment term and his maximum possible term of supervised release, in separate affirmative responses).[2]

---

[2] Moreover, even if this Court's instructions were less than perfectly clear to Petitioner, such a procedural defect would be insufficient to support Petitioner's collateral attack on his sentence. In United States v. Ackerman, the Third Circuit considered whether a sentencing judge's failure to inform a defendant that a special parole term might be imposed in addition to standard parole violated Rule 11 and supported a motion to vacate, set aside, or correct the sentence of a federal prisoner pursuant to Section 2255. 619 F.2d 285, 287 (3d Cir. 1980) (per curiam). The court held that, even if proven, allegations of such Rule 11 noncompliance were insufficient to support a

Furthermore, the Court's oral explanation of the maximum penalties, including imprisonment and supervised release, reinforced the written advice of these statutory maximum penalties contained in Petitioner's written plea agreement dated October 10, 2003, which he read, understood, and accepted. (Tr. 01/06/04 at 6-24.) The plea agreement specifically advised Mr. Spencer that this violation of Section 922(g)(1) "to which Spencer agress to plead guilty carries a statutory maximum prison sentence of 10 years, . . . . Further, in addition to imposing any other penalty on Spencer, the sentencing judge . . . must require Spencer to serve a term of supervised release of at least two years but not more than three years, which will begin at the expiration of any term of imprisonment imposed . . . ." (emphasis added). (Plea Agreement, Oct. 10, 2003 at pp. 1 & 2.) There could have been no doubt that Petitioner knew he could receive a maximum penalty of ten years in prison plus three years of supervised release to commence when he came out of prison.

This Court therefore holds that Petitioner is entitled to no relief on the ground of alleged inadequate notice pursuant to Rule 11 because the Court explained the maximum term of imprisonment,

---

collateral motion to correct the prisoner's sentence because such a mistake would be neither "constitutional nor jurisdictional," would not result in "a complete miscarriage of justice," and would not be "inconsistent with the demands of fair procedure." Id. at 287 (citing United States v. Timmreck, 441 U.S. 780 (1979)).

maximum term of supervised release, and maximum fines to the
Petitioner prior to accepting his guilty plea and because even if
the Court had not, that would not be grounds to vacate its
sentence.  See Ackerman, 619 F.2d at 287; see also Timmreck, 441
U.S. at 783-84 (noting that failure to even mention special parole
was insufficient to sustain Section 2255 motion).

### F.   Petitioner's Claims Regarding His Indictment and the Factors Used to Determine His Sentence

An indictment must set forth each element of the crime it
charges, Hamling v. United States, 418 U.S. 87, 117 (1974); United
States v. Spinner, 180 F.3d 514, 515 (3d Cir. 1999) (citation
omitted), and all elements of the crime must be proven to a jury
beyond a reasonable doubt unless conceded by the defendant, In re
Winship, 397 U.S. 358, 361 (1970).  Petitioner argues that, in
light of the Supreme Court decisions in Blakely and Booker,[3] the
Court has violated the Fifth and Sixth Amendments by failing to
indict his prior convictions and the stolen status of the Weapon,
and by failing to submit these sentencing factors to a jury for
proof beyond a reasonable doubt.  As a matter of law, however,
Petitioner's arguments are without merit.

### 1.   Petitioner's Prior Convictions

Petitioner argues that the Court violated the Fifth
Amendment's guarantee of a criminal indictment by a grand jury by

---

[3]  As explained infra, Blakely and Booker do not apply to
this petition.

convicting him pursuant to an indictment that failed to allege his prior convictions, and violated the Sixth Amendment's guarantee of a jury trial by failing to prove the fact of these prior convictions, used to determine Petitioner's sentence, to a jury beyond a reasonable doubt.   (Pet'r's. Br. at 2.)   However, prior convictions need not be alleged in the indictment or proven to a jury beyond a reasonable doubt.  <u>Apprendi v. N.J.</u>, 530 U.S. 466, 476 (2000); <u>see also</u> <u>United States v. Ordaz</u>, 398 F.3d 236, 241 (3d Cir. 2005) (applying this rule despite recognizing the "tension" between it and the rule that all elements of a crime must be proven beyond a reasonable doubt).

In <u>United States v. Coleman</u>, the Third Circuit considered the constitutionality of a defendant's indictment charging him "with possession of a firearm by a convicted felon in violation of Section 922(g)(1)."  451 F.3d 154, 156 (3d Cir. 2006).  The court upheld the constitutionality of the defendant's indictment, under the Fifth Amendment, and the constitutionality of defendant's sentence, under the Sixth, by holding that his prior convictions need not be set forth in his indictment, nor proven to a jury beyond a reasonable doubt.  <u>Id.</u> at 159.  The Court reasoned that recidivism is a traditional sentencing factor that goes only to punishment.  <u>Id.</u>

Likewise, Petitioner's indictment simply need not set forth his prior convictions, nor must the fact of prior convictions be

proven beyond a reasonable doubt.  <u>See</u> <u>Coleman</u>, 451 F.3d at 159
(holding that an indictment need not set forth a prior
conviction).

        Moreover, Petitioner's Fifth Amendment allegations that he
has not been properly indicted by the grand jury are unsupported
by the record.  The grand jury indicted Petitioner with a
violation of Section 922(g) by carefully tracking the statutory
language.  (<u>See</u> Ind'mt) (charging that Petitioner "<u>having been</u>
<u>convicted of a crime</u> punishable by imprisonment for a term
exceeding one year in a court in the State of New Jersey, did
knowingly possess in and affecting commerce a firearm, namely, one
loaded Smith & Wesson, Model 442, .22 caliber revolver, bearing
serial number UAB4722") (emphasis added).  The indictment
therefore set forth all elements of a Section 922(g) offense.  <u>See</u>
<u>United States v. Cefaratti</u>, 221 F.3d 502, 508 (3d Cir. 2000)
(noting that an indictment need not follow any "ritualistic" form
and may simply track the statutory language of the offense).  This
Court therefore did not violate Petitioner's Fifth and Sixth
Amendment rights to a grand and petit jury by failing to indict
prior convictions or by failing to prove the existence of these
convictions beyond a reasonable doubt.

        2.  <u>The Stolen Status of the Weapon</u>

        Petitioner argues that the Court violated the Fifth Amendment
by failing to allege that the Weapon was stolen in the indictment

16

and violated the Sixth Amendment by failing to require proof of this fact beyond a reasonable doubt.  (Pet'r's. Br. at 2.) However, facts a judge uses to increase a defendant's sentence, if the sentence remains beneath the statutory maximum, do not have to be included in the indictment and do not need to be proven beyond a reasonable doubt.  Apprendi,  530 U.S. at 476.

In United States v. Rouse, the Third Circuit considered the constitutionality of a defendant's indictment for violation of Section 922(g) and his subsequent sentence below the statutory maximum.  No. 05-4035, 2007 WL 1654171, at *2 (3d Cir. June 9, 2007) (not precedential).  The weapon possessed by the defendant was stolen; however, the defendant's indictment did not allege this fact, nor did a jury determine it beyond a reasonable doubt. Id.  Rather, the district judge made that finding by a preponderance of the evidence and used it to determine the defendant's sentence.  Id.  The Third Circuit affirmed the constitutionality of the indictment, under the Fifth Amendment, and the constitutionality of the subsequent sentence, under the Sixth, by reasoning that the sentencing judge could consider factors not alleged in the indictment for sentencing purposes "so long as that sentence is at or below the statutory maximum."  Id.

Similarly, this Court did not violate the Fifth and Sixth Amendments even though the Grand Jury did not allege the stolen status of the Weapon in Petitioner's indictment.  Nor need the

17

Court have required proof of this fact beyond a reasonable doubt because the stolen status of the Weapon is not an element of Section 922(g) and because a sentence of seven years and eight months does not exceed the ten-year maximum allowed by statute. See Rouse, 2007 WL 1654171, at *2. This Court therefore did not violate Petitioner's Fifth and Sixth Amendment rights by determining his sentence using factors neither alleged in the indictment nor proven beyond a reasonable doubt because the Weapon's stolen status is not an element of Section 922(g) and Petitioner's sentence did not exceed the statutory maximum.

### 3.  Petitioner's *Blakely* and *Booker* Argument

Petitioner argues that his sentence violates the Constitution as explained in Blakely v. Washington, 542 U.S. 296 (2004), and United States v. Booker, 543 U.S. 220 (2005). However, Blakely and Booker do not apply retroactively to cases on collateral review that became final after those decisions. See Lloyd v. United States, 407 F.3d 608, 610 (3d Cir. 2005)(reasoning that Blakely and Booker do not fall into one of the two narrow Teague v. Lane, 489 U.S. 288 (1989) exceptions for retroactive application). As noted supra, Petitioner's conviction became final on April 19, 2004. Blakely and Booker were decided on June 24, 2004 and January 12, 2005, respectively. Booker and Blakely therefore do not apply retroactively to Petitioner's claims on collateral review because his case became final before those

18

decisions were rendered.

Moreover, even if <u>Blakely</u> were applicable retroactively, and if the two-point increase in the Guidelines Score for the stolen Weapon were disregarded (as not found by the jury beyond a reasonable doubt), then Mr. Spencer's Guideline range would have been determined by Total Offense Level 21 and Criminal History Category VI, yielding 77-96 months; Mr. Spencer's ninety-two month sentence lies even within this reduced range.

Relatedly, Petitioner argues that he would not have waived his right to a jury trial had he known that his Offense Level might be increased by two points because the Weapon was stolen. (Pet'r's. Br. at 7.)  The Court finds this contention completely unsupported by the record.  At the latest, Petitioner discovered that the Weapon was stolen on October 10, 2003, months before he pled guilty.  (<u>See</u> Resp't's. Suplm. Br. Ex. G at 1) (disclosing Government's contention that Weapon was stolen); (Resp't's. Suplm. Br. Ex. F at 2-3) (noting that an NCIC search confirmed that the Weapon was stolen).  Petitioner did not waive his right to a jury trial until the Court accepted his guilty plea on January 6, 2004, (<u>see</u> Tr. 01/06/04 at 10) (noting that the Court informed Mr. Spencer that he still had the opportunity to a jury trial), at which time Petitioner knew for about four months that the government was alleging that the Weapon was stolen.  Moreover, the Court repeatedly informed Petitioner that no one had agreed to the

length of his sentence and that the Court would determine it in accordance with the Guidelines.  (Id. at 9:8-15; 12:20-14:3; 14:4-17:7.)  He also explicitly acknowledged his understanding that hewould not be permitted to withdraw his plea of guilty on the ground that the Guideline range as determined by the Court turns out to be different from what he hoped for or expected.  (Id. at 19:24-20:3.)

In sum, this Court holds that Petitioner's sentence does not violate the Fifth or Sixth Amendment because (1) a prior conviction does not need to be alleged in a defendant's indictment or proven to a jury beyond a reasonable doubt and (2) the stolen status of a firearm need not be set forth in an indictment for a Section 922(g) offense and may be determined by the judge under a preponderance of the evidence standard so long as the defendant's sentence is below the statutory maximum of ten years.

### G.  Petitioner's Claim Regarding Misapplication of the Guidelines

The Guidelines increase a defendant's Criminal History Score by three points for every prior felony conviction resulting in a term of imprisonment exceeding one year and one day.  U.S.S.G. § 4A1.1(a).  Prior sentences that are "related", however, are grouped together for purposes of Criminal History Score calculation, and only given the number of points attributable to the highest level sentence in the group.  § 4A1.2(a)(2).  "Prior sentences are not 'related' if they were for offenses that were

20

separated by an intervening arrest." § 4A1.2 n. 3. Indeed, when multiple prior offenses are separated by intervening arrests, those offenses cannot be considered related. <u>United States v. Hallman</u> 23 F.3d 821, 825 n. 3 (3d Cir. 1994) (citing <u>United States v. Gallegos-Gonzalez</u>, 3 F.3d 325 (9th Cir. 1993)).

Petitioner argues that this Court miscalculated his Criminal History Score by assigning three points to each of three previous convictions that were consolidated for trial purposes and sentenced to concurrent terms in state court, instead of assigning them a total of three points by considering the convictions "related." (Pet'r's. Suplm. Br. at 1.) On March 26, 1999, Petitioner was arrested for a robbery that he committed on March 26, 1999. (P. Sent. Invstg. Rpt. at 11.) Months later, on May 9, 1999, Petitioner was arrested for unlawful possession of a handgun that occurred on May 9, 1999. (<u>Id.</u> at 12.) Finally, on July 14, 1999, Petitioner was again arrested for unlawful possession of a handgun that occurred on July 14, 1999. (<u>Id.</u> at 13.) These convictions are not "related" for purposes of § 4A1.2(a)(1) because Petitioner was arrested for the first offense prior to committing the second, and was arrested for the second offense prior to committing the third. This is so, regardless of how state authorities treated the charges. The Court recognized at sentencing that the existence of intervening arrests is a threshold inquiry that precludes consideration of sentences as

"related."   See U.S.S.G. § 4A1.2 n. 3 ("Prior sentences are not
considered related if they were for offenses that were separated
by an intervening arrest"); Hallman, 23 F.3d at 824-25 (noting
that if there are intervening arrests, the inquiry into
relatedness ends).   This Court therefore did not misapply the
Guidelines in computing the Petitioner's Criminal History Score
because none of Petitioner's arrests were "related."

### H.  Petitioner's Claim Regarding Ineffectiveness of Counsel

A defendant has a Sixth Amendment right not just to counsel,
but to "reasonably effective assistance" of counsel.   Day, 969
F.2d at 42 (citing Strickland v. Washington, 466 U.S. 668, 687
(1984)).   To show that he has been denied this right, however, a
defendant must show "that 1. his attorney's performance was, under
all the circumstances, unreasonable under prevailing professional
norms, and . . . that 2. there is a reasonable probability that,
but for counsel's unprofessional errors, the result would have
been different."   Id.

Petitioner argues that his counsel was ineffective because he
failed to raise Blakely objections regarding the Court's failure
to submit certain sentencing enhancement factors to the jury.
(Pet.'r's Br. at 6-7.)   Petitioner's claim is simply without
merit, because Blakely had not been decided as of Petitioner's
sentencing on April 8, 2004.   See Blakely, 542 U.S. at 296 (noting
a date of decision of January 12, 2005).   A lawyer's conduct does

not fall unreasonably below prevailing professional norms for failing to rely on the holdings of undecided cases.  See Fuller v. United States, 398 F.3d 644, 651 n. 4 (7th Cir. 2005).  In addition, and as noted supra, anticipating and making the arguments in Blakely would not have changed Mr. Spencer's sentence.  Thus, there could have been no prejudice to Petitioner.

Finally, Petitioner argues that his counsel was ineffective for failing to "hold" the Government to a Base Level Offense score of twenty.  It is sufficient to note that Petitioner's counsel had no duty to "hold" the Government to a base offense level to which the parties did not agree.  Petitioner's plea agreement stipulates that no decision as to the Petitioner's ultimate sentence was reached, (Presentence Invstg. Rpt. at 4), and ultimately it was the Court that determined Petitioner's Offense Level, not the Government, see U.S.S.G. 1B1.4 (noting that a sentencing judge may take any factor into consideration for purposes of sentencing).

This Court holds that Petitioner was not denied effective assistance of counsel, in violation of the Sixth Amendment, because failing to forecast legal changes is not unreasonable professional error and because even successfully forecasting the Blakely and Booker holdings would not have reduced Petitioner's sentence.

23

III.   **CONCLUSION**

For the reasons stated, Petitioner's 28 U.S.C. § 2255 habeas corpus petition will be denied.  The Petitioner has not demonstrated that the Court misapplied the Guidelines or violated the Constitution.  The Court further finds that Petitioner has made no substantial showing of the denial of a constitutional right, pursuant to 28 U.S.C. § 2253(c)(2), and that no certificate of appealability shall issue.  The accompanying Order will be entered.


**August 16, 2007**                        **s/ Jerome B. Simandle**
Date                                       JEROME B. SIMANDLE
                                           U.S. District Judge